## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **ORR ASSOCIATES, INC.**<br>2801 M Street, N.W.<br>Washington, D.C. 20007 | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | **Case Number:** _____ |
| **JENNIFER MOTTERSHEAD**<br>1306 27th Street, N.W.<br>Washington, D.C. 20007 | ) ) ) ) | |
| and | ) ) | |
| **FOUNDATION MANAGEMENT GROUP**<br>1055 Thomas Jefferson Street, N.W.<br>The Foundry, Suite L 14<br>Washington, D.C. 20007 | ) ) ) ) ) | |
| Defendants. | ) ) | |

## VERIFIED COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF AND MONETARY DAMAGES

Plaintiff Orr Associates, Inc. ("OAI" or "the Company"), by counsel, alleges

for its Verified Complaint against Defendants Jennifer Mottershead and Foundation

Management Group ("FMG") as follows:

### Nature of Action

1.      Mottershead formerly had an independent contractor relationship with

OAI.  Notwithstanding being subject to contractual obligations that she not disclose, use, or

misappropriate any of OAI's confidential or proprietary information, and that for a period of

time following the termination of her relationship with OAI, she not solicit any of OAI's

clients, Mottershead has acted in blatant disregard and breach of those obligations.  Acting

both individually and indirectly through her new company, FMG, Mottershead has unlawfully solicited current OAI customers and has used and disclosed OAI confidential information and trade secrets in the process.

       2.     OAI brings this suit for preliminary and permanent injunctive relief and damages arising out of Mottershead's wrongful conduct following the termination of her relationship with OAI, including: (1) her willful solicitation of OAI clients in violation of her contractual obligations to OAI – in particular, her solicitation of OAI client Deafness Research Foundation; (2) her use and disclosure of OAI's confidential and proprietary information in violation of her contractual obligations to OAI; (3) her misappropriation of OAI's trade secrets in violation of the D.C. Uniform Trade Secrets Act, D.C. Stat. Ann. § 35-401 et seq.; (4) her tortious interference with OAI's contract with DRF; (5) her tortious interference with OAI's prospective economic advantage with DRF; and (6) her unauthorized access of OAI's computer and copying of OAI's confidential information, in violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030.

### The Parties

       3.     Plaintiff OAI is a Delaware corporation with its principal place of business in Washington, D.C.

       4.     Upon information and belief, Mottershead is a resident of Washington, D.C. She had an independent contractor relationship with OAI from September 1, 2005 through November 30, 2006.

       5.     Upon information and belief, FMG is a corporation with its principal place of business in Washington, D.C.

2

**Jurisdiction and Venue**

6.      The Court has subject matter jurisdiction over OAI's Computer Fraud and Abuse Act claim pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1030(g). The Court has jurisdiction over OAI's remaining claims pursuant to 28 U.S.C. § 1367(a).

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Mottershead resides in the District of Columbia and FMG's principal place of business is in the District of Columbia. Venue is also proper under this provision because a substantial part of the events giving rise to the claims occurred in the District of Columbia.

8.      Moreover, Mottershead has consented to this Court's jurisdiction. Mottershead's 2006 Contractor Proprietary Information and Non-Competition Agreement with OAI provides that any disputes arising from the interpretation or operation of the agreement must be resolved in the U.S. district court or the courts of the District of Columbia, and that the parties consented to and elected such jurisdiction in the event of litigation relating to the Agreement. See Contractor Proprietary Information and Non-Competition Agreement, attached hereto as Exhibit 1, at ¶ 9.

**Background**

9.      OAI is in the business of providing consulting services to non-profit organizations. In particular, it provides consulting with respect to strategic planning, board development, grants management, development management, campaign management, event management, and fundraising for non-profit organizations in Washington, D.C. and nationwide. In addition, OAI has particular expertise in non-profit management. Accordingly, with respect to some non-profit organizations, OAI provides all of these services, even to the extent that an OAI executive will serve as the executive director of the non-profit organization. Its customers include non-profit organizations in various fields, such

3

as health, youth, fitness, social services, national security, professional industry associations, and faith-based organizations.

      10.     Investing in its business, OAI has expended substantial time, labor, and money in identifying and developing management consulting plans, information regarding client needs and requirements, costs and pricing data, and other proprietary information pertaining to its consulting services and business growth. All of the foregoing, singularly and collectively, constitute OAI's trade secrets and confidential and proprietary information. These trade secrets are owned by OAI, used in the operation of its business, and provide OAI with advantages over other consulting firms that do not know or use such information.

      11.     OAI has generated substantial trade secret and confidential information in developing, providing, and marketing its consulting services. This information has been developed since OAI's inception in 1991, and OAI continues to spend a significant amount of time and resources in developing, maintaining, and preserving its trade secrets. OAI's confidential information and trade secrets allow it to provide the most detailed, sophisticated, and effective consulting services to its clients. Were such sensitive information to be shared with OAI's competitors, it would cause serious damage to OAI's competitive advantage.

      12.     Accordingly, the preservation of the trade secrets and proprietary information relating to OAI's clients' needs and the consulting solutions OAI provides to its clients – including strategies relating to organization management, development management, fundraising, and other consulting services -- as well as OAI's pricing information and marketing strategies, is critical to OAI's success and future development.

      13.     Such information gives OAI a competitive advantage in the industry by virtue of its not being readily ascertainable by OAI's competitors. Accordingly, OAI has taken reasonable steps to protect this information. For example:

\\\NORTHVA - 028803/000001 - 367606 v5

(a)      all employees and independent contractors are required to sign confidentiality and non-solicitation/non-competition agreements as a condition of their employment or engagement with OAI;

(b)      access to the OAI computer system is limited to OAI's directors, employees, and independent contractors, each of whom has a personal login and password;

(c)      OAI's consulting contracts with each of its clients are password-protected, limiting access to these agreements to only those employees or independent contractors specifically authorized by OAI;

(d)      the main entrance to OAI's offices is monitored during the workday by a receptionist, and otherwise is locked and can only be accessed with a magnetic key card given to each employee or independent contractor; and

(e)      the Company maintains policies for the protection of confidential information, which are communicated to employees and independent contractors at the time of hire or engagement.

14.      Additionally, as a result of OAI's significant investment in providing consulting services tailored to its clients' needs, OAI has developed ongoing relationships with its clients. A primary reason for OAI's success is the good will that it develops with its clients as it works closely with them to develop strategies that will allow them to attain their goals. OAI's employees and contractors are critical to this process and are responsible for working with existing customers on an ongoing basis, using their training and expertise – acquired at OAI's expense – to instill confidence in the customers and to ensure that customers remain satisfied with OAI's services.

15.      Mottershead entered into an independent contractor arrangement with OAI in September 2005. The primary purpose of this arrangement was for Mottershead to

5

provide grants management services to OAI's clients, including Deafness Research Foundation ("DRF").

16.     As a result of her relationship with OAI, Mottershead had access to a wealth of OAI's confidential and proprietary information and trade secrets identified above, including OAI's strategies relating to non-profit management, fundraising, and the other consulting services OAI provides, OAI's costs and pricing information, and specific information relating to each of OAI's clients, their needs, and the consulting proposals and services OAI had provided to them.

17.     Moreover, given Mottershead's close involvement with DRF, she gained in-depth knowledge of DRF's structure, methods of operation, and goals, as well as OAI's strategies for providing solutions to meet DRF's particular management needs.  In addition, Mottershead learned valuable information about OAI's costs to provide services to DRF and the prices it charged to DRF for those services.

18.     Following her initial agreement with OAI in September 2005, Mottershead entered into subsequent agreements with OAI confirming her status as an independent contractor and her role in providing grants management services for OAI's client DRF.  The last of these agreements was for the term August 1, 2006 through July 31, 2008, and could be terminated by either party at any time.

19.     On or about October 31, 2006, OAI informed Mottershead that it was terminating her engagement with OAI, effective November 30, 2006.  It was understood that Mottershead intended to continue to perform grants management services full-time through her own company, FMG.  As part of the termination, Mottershead was permitted to use OAI's office space to operate FMG until December 31, 2006.  Upon information and belief, FMG now purports to provide various consulting services, including grants management,

administration and compliance, and accounting and bookkeeping to non-profit organizations in Washington, D.C. and nationwide.

**Mottershead's Contractual Obligations to OAI**

20.     In addition to the various agreements confirming her independent contractor status and the services she would provide to OAI, Mottershead entered into a Contractor Proprietary Information and Non-Competition Agreement ("the Agreement") with OAI on August 1, 2006.  A true and correct copy of the Agreement is attached hereto as Exhibit 1.

21.     The Agreement – which Mottershead was required to sign as a condition of her continued relationship with OAI, and in further consideration of the sum of ten dollars ($10.00) paid to Mottershead by OAI – requires Mottershead to maintain the confidentiality of OAI information.  Specifically, the Agreement states:

> Contractor shall at all times hold Confidential Information in trust for the Corporation or its clients, and shall not at any time either directly or indirectly use, divulge, disclose, or communicate Confidential Information to any person or entity in any manner, and without regard to whether the foregoing matters would be deemed trade secrets, the parties hereto stipulating that, as between them, they are confidential and material to the effective and successful conduct of the business of the Corporation, and further that any breach of this section shall be a material breach of the Agreement. Contractor's obligations under this section shall survive the termination of Contractor's engagement regardless of cause.

Ex. 1, ¶ 1.

22.     The Agreement defines "Confidential Information" as "information or data concerning the Corporation or matters affecting or relating to its business, including without limitation the manner of the Corporation's operation, the names of its clients and their donors, the terms or prices under which it obtains or sells its services, information provided by the Corporation's clients, and other information." Id.  Under the Agreement, Confidential Information shall exclude only information or documents that Mottershead could demonstrate by clear and convincing evidence was publicly available prior to her

engagement, was publicly available other than by reason of her disclosure, or was provided to her by third parties under no obligation of confidentiality to OAI. Id.

23.     The Agreement also requires Mottershead, upon termination of her engagement with OAI for any reason, to return to OAI, without making or retaining copies thereof, all documents she had obtained that pertain to OAI's business or its clients, including without limitation OAI's Confidential Information. Id. ¶ 2. The term "documents" is defined to include all information and material in whatever form recorded, including written or printed documents, computer disks, and other media. Id.

24.     Mottershead is also prohibited under the Agreement, during her engagement and for a period of one (1) year after the termination of her engagement, from soliciting any of OAI's "known client[s]." Id. ¶ 3. As with the confidentiality provision quoted above, the Agreement states that Mottershead's obligations under this non-solicitation provision shall survive the termination of her agreement with OAI for any reason.

25.     Furthermore, Mottershead specifically acknowledges in the Agreement that maintaining good will with OAI's vendors, clients, and potential clients is material to the success of the Corporation. Id.

26.     The Agreement contains a provision expressly superseding all previous agreements, written or oral, relating to the matters set forth therein. Id. ¶ 7. It is governed by the law of the state of Delaware, but the parties to the Agreement agreed that any dispute arising form the interpretation or operation of the Agreement shall be resolved in the U.S. District Court or the courts of the District of Columbia. Id. ¶ 9.

27.     The restrictive covenants entered into by Mottershead are valid and enforceable. The contract was entered into by the mutual agreement of OAI and Mottershead, and she received valuable consideration in exchange for her promises, including

8

but not limited to a continued engagement with OAI as an independent contractor, for which she received significant monetary compensation.

**Mottershead's Breaches of Contract And Other Unlawful Conduct**

Solicitation of DRF

28.     OAI has learned that as early as November 2006, Mottershead began discussions with a consulting firm called The Webster Group ("TWG") in an effort to establish a working relationship through which she would pursue OAI's clients for her own business, FMG.

29.     In particular, on November 7, 2006, Mottershead sent an e-mail to Lynda Webster of TWG referencing an earlier meeting between Mottershead, Webster, and other TWG members.  In this e-mail, she stated her interest in partnering with TWG to provide consulting services.  On the same day, Mottershead also sent an e-mail to Lizette Corro of TWG, referencing the same meeting and again expressing her interest in working with TWG.  TWG responded positively to Mottershead's interest in a partnership to provide consulting services.

30.     As a result of these and other communications, Mottershead and TWG devised a plan to solicit OAI's client DRF, with which Mottershead had had contact in connection with the performance of her agreement with OAI.  Mottershead engaged in such solicitations in an effort to divert DRF's non-profit management and fundraising business from OAI to TWG and Mottershead's own company, FMG.

31.     Specifically, Mottershead had conversations with Rebecca Ginzburg, Chair of DRF and Dr. George Gates, Chair of the Council of Scientific Trustees and a member of DRF's Board of Directors, during the second week of December 2006, regarding the possibility of Mottershead and TWG performing consulting services for DRF. Subsequently, on December 18, 2006, Mottershead sent Ginzburg an e-mail with an attached

9

letter setting forth the reasons why FMG and TWG would be able to provide DRF with the kinds of non-profit management and fundraising services it needed moving forward, which would specifically replace services OAI was then providing to DRF. This letter referenced their conversation from the previous week, described Mottershead's new company, and explained the benefits of her relationship with TWG and, in particular, TWG's Chief Executive Officer Lizette Corro. Mottershead stated that she wished to have "a larger role . . . with the DRF," and further explained, "I am very interested in exploring how my background and experience together with my current knowledge of DRF might bring value to the organization." The e-mail with the attached letter was copied to Lizette Corro and to Dr. George Gates.

33.     After receiving this letter, Ginzburg responded to Mottershead with an invitation for the two to meet together with other members of the DRF Board to discuss the possibility of Mottershead and TWG providing consulting services to DRF. Several e-mails were exchanged during which Ginzburg, Mottershead, and TWG agreed to meet in New York on January 4, 2007, to discuss the details of non-profit management services and fundraising services that Mottershead would provide for DRF.

33.     On December 24, 2006, following Mottershead's solicitation of DRF through Rebecca Ginzburg, Ginzburg informed OAI that DRF was terminating its contract for non-profit management services and fundraising services with OAI.

34.     Mottershead's communications with DRF in December 2006 prior to DRF's termination of its relationship with OAI constituted a breach of her non-solicitation obligations under the Agreement. It is evident that Mottershead's communications were for the purpose of soliciting DRF to become a client of FMG and TWG with respect to non-profit management and fundraising services, and diverting DRF's business away from OAI. Furthermore, under the plain terms of the Agreement, DRF was a "known client" of OAI at

10

the time of Mottershead's solicitation. Indeed, Mottershead herself was responsible for
providing grants management services to DRF on behalf of OAI, and her communications
with DRF occurred before DRF terminated its relationship with OAI, in direct contravention
of Mottershead's Agreement.

Use and Disclosure of Confidential Information/Misappropriation of
Trade Secrets

35.     In addition to violating the non-solicitation provision of the
Agreement, Mottershead breached the Agreement by using and disclosing OAI's
Confidential Information. She further misappropriated OAI's trade secrets for her own
purposes and without prior authorization.

36.     On December 27, 2006, Mottershead sent an e-mail to Wendy Drake
of TWG that contained several attachments. One attachment, entitled "REC brain dump,"
was an outline prepared by Rob Carter, Managing Director of OAI, containing strategies for
OAI to pursue in providing consulting services to DRF. The outline identified the various
development areas in which DRF needed assistance and described the strategies that OAI
would pursue to arrive at solutions for each of DRF's needs. This document contained highly
sensitive confidential information and trade secrets that OAI had developed over the years in
its effort to provide specialized, effective consulting services to its clients, and is exactly the
kind of document that, if shared with OAI's competitors, would cause significant harm to
OAI's competitive advantage. Mottershead's providing such information to TWG breached
her obligation not to disclose OAI's Confidential Information, as set forth in her Agreement,
and constituted misappropriation of OAI's trade secrets.

37.     Moreover, Mottershead's cover e-mail to Drake stated, "[T]his is to get
started. [L]ook at the draft outline - the rest is background." Thus, it is clear that not only
did Mottershead disclose Confidential Information to TWG, but she intended to use this

11

information as part of her partnership with TWG to provide better and more targeted services to DRF and thus compete more effectively with OAI.

38.     In addition, on December 21, 2006, Mottershead forwarded to Lizette Corro of TWG an e-mail that had been sent that day by Steve Orr, Managing Partner of OAI and a member of DRF's Board of Directors, to the remaining members of DRF's Board and other OAI employees. The e-mail contained information about grants for which DRF had applied and received money, as well as information about DRF's budget, funds it expected to receive, and its cash reserves. This information was proprietary to DRF, one of OAI's clients, and thus within the definition of "Confidential Information" under the terms of the Agreement, but in addition, disclosure of such detailed information about the financial status of DRF would allow a competitor like TWG to more effectively compete for DRF's business.

39.     Not only did Mottershead disclose confidential OAI strategies and client information to TWG, but she also sent copies of OAI proprietary documents to one of her employees for use by FMG. In particular, on December 22, 2006, Mottershead sent an e-mail to Monika Richardson, an FMG employee – who upon information and belief resides in Indiana – that contained several attachments. All of the attachments were OAI proprietary documents, including OAI timesheet forms and OAI supply and purchase order forms. The e-mail stated, "I have attached lots of forms for you – pick the ones you like and need and change the heading to FMG."

40.     Mottershead sent two more e-mails to Richardson on December 30, each of which attached additional OAI documents for Richardson to copy and revise so that the name on the document read "FMG" rather than "OAI." Among the attachments were documents providing the various steps one would use to gain remote access to the OAI computer server.

Copying and Retention of OAI Documents

41.     Mottershead's use and disclosure of OAI's Confidential Information and trade secrets, as set forth above, also violated the provision of her Agreement with OAI with respect to returning OAI's proprietary information.

42.     Furthermore, Mottershead devised a scheme to obtain various other OAI documents containing Confidential Information and trade secrets not related to OAI's work for DRF.

43.     On Saturday, December 23, 2006, after her engagement with OAI had terminated but while she continued to rent space in OAI's offices, Mottershead copied several OAI documents from the "J Drive" and "K Drive" of OAI's computer system – both of which are shared drives – to her personal "X Drive." Only Mottershead and OAI's associate in charge of information technology, Mirjam Krull, had access to her personal X Drive.

44.     Among the documents copied by Mottershead, all of which contained OAI's pricing structure and other proprietary information, were: (1) an OAI consulting services agreement template, which would typically be supplemented and tailored to each particular OAI client; (2) OAI's July 2006 proposal to The Salvation Army National Capital Area regarding Campaign Feasibility; (3) OAI's November 2006 proposal to The Metropolitan Club of the City of Washington regarding Campaign Feasibility and Campaign Management; and (4) OAI's October 2006 proposal to Restless Legs Syndrome Foundation for consulting services relating to development.

45.     With respect to OAI's use of documents (2)-(4) listed above during its ordinary course of business, assuming that OAI's proposals were accepted, the title of each of these documents would be changed to "contract" and the document would serve as the written agreement between OAI and the particular client.  Thus, these proposals contained OAI's strategies, descriptions of the services it would provide, pricing, and other Confidential

13

Information and trade secrets.  Indeed, each document contained a "footer" with OAI's

insignia, as well as a statement that the proposal contained data that should not be disclosed

to anyone other than the client at issue, nor should it be duplicated, used, or disclosed for any

purpose other than to evaluate the proposal.

46.    Although all the documents copied by Mottershead were available on

OAI's shared drives, which Mottershead could access with a login and password, the

proposals pertained to OAI clients with whom Mottershead had no connection and had never

performed any services.  In the ordinary course of her relationship with OAI, Mottershead

would not have been informed of the proposals – and in particular, the pricing information –

provided to the clients at issue.  Only through a long and detailed search of OAI's entire

computer system could Mottershead have identified these proposals and copied them to her

personal X Drive.

47.    On December 30, 2006, one week after Mottershead copied the files

from the OAI shared drives, Mottershead asked Krull to burn the documents from her

personal X Drive onto a CD for her to take upon her departure from OAI.  Mottershead

suggested to Krull that the X Drive contained her personal documents.  Employees and

contractors are instructed not to maintain OAI's proprietary information on their X Drives,

but to use the X Drive for their personal documents.  As a result, Krull did not know, nor

should she have known, that Mottershead's X Drive would contain OAI's Confidential

Information and trade secrets.

48.    At no time did Mottershead inform Krull that the X Drive contained

OAI's proprietary information, and in any event, as an associate, Krull was not authorized to

grant Mottershead permission to copy any OAI proprietary information.  Mottershead did not

seek or obtain permission from anyone else at OAI to copy and retain this information for her

personal use.

## Count I – Breach of Contract
### (Mottershead)

49.     OAI hereby incorporates by reference and realleges the allegations in Paragraphs 1 through 48 as if fully set forth herein.

50.     Mottershead's Agreement with OAI is a valid and enforceable contract, under which she agreed, *inter alia*, that she would (1) refrain from soliciting any of OAI's known clients during her relationship with OAI or for one year after the termination of her relationship; (2) refrain from using, divulging, disclosing, or communicating any of OAI's Confidential Information; and (3) return all of OAI's proprietary information upon the termination of her engagement with OAI.

51.     OAI provided consideration for and fully performed its obligations under the Agreement.

52.     Mottershead breached her obligations under the Agreement by, *inter alia*, (1) soliciting OAI's client DRF in December 2006 in order to divert DRF's non-profit management and fundraising business away from OAI and secure a consulting agreement between DRF and her own company; (2) disclosing to TWG and to other employees at FMG confidential, proprietary information and trade secrets of OAI, and using this information for the benefit of FMG and TWG; and (3) retaining OAI's confidential information that Mottershead forwarded to FMG and/or TWG without authorization and copied from OAI's computers without authorization.

53.     By her repeated violations, Mottershead has indicated her intent not to abide by the confidentiality and non-solicitation obligations in her Agreement.

54.     OAI has suffered and will continue to suffer irreparable harm and other damages as the direct and proximate consequence of Mottershead's breaches of the obligations in her Agreement.

55.     OAI is entitled to injunctive relief to prevent Mottershead from continuing to breach her confidentiality and non-solicitation obligations, and is further entitled to recover compensatory and consequential damages as a result of Mottershead's breaches of contract.

## Count II – Misappropriation of Trade Secrets
### (Mottershead and FMG)

56.     OAI hereby incorporates by reference and realleges the allegations in Paragraphs 1 through 55 as if fully set forth herein.

57.     Information possessed by OAI, whether or not in writing, and related to its clients' identities and consulting needs, contracts with its clients, pricing information, strategies, consulting services, business development, and any additional information referred to directly or indirectly in this Complaint, and any other information Mottershead has learned solely by virtue of her independent contractor relationship with OAI, constitutes trade secrets under the D.C. Uniform Trade Secrets Act, D.C. Stat. Ann. § 36-401 et seq. Such information derives independent economic value, actual and potential, from not being generally known to and not being readily ascertainable to other persons who could obtain economic value from such information, and because such information is subject to reasonable efforts by OAI to maintain its secrecy.

58.     Mottershead, and by extension FMG, have misappropriated OAI's trade secrets, including without limitation by using and disclosing them despite Mottershead's duty under the Agreement to maintain their secrecy. This use and disclosure of OAI's trade secrets was without the express or implied consent of OAI.

59.     The misappropriation of OAI's trade secrets by Mottershead and FMG is and will be willful, malicious, and intentional.

\\\NORTHVA - 028803/000001 - 367606 v5

60.    If not enjoined by way of an injunction, Mottershead and FMG will continue to misappropriate OAI's trade secrets and OAI will suffer irreparable harm as a result.  There is no adequate remedy at law for such misappropriation.

## Count III – Tortious Interference With Contract
### (Mottershead and FMG)

61.    OAI hereby incorporates by reference and realleges the allegations in Paragraphs 1 through 60 as if fully set forth herein.

62.    OAI had a valid and enforceable agreement with DRF to provide DRF with various consulting services, including non-profit management and fundraising.

63.    Mottershead, as an independent contractor engaged specifically for the purpose of assisting OAI in its servicing of the agreement with DRF, had full knowledge of the consulting agreement between OAI and DRF.

64.    Despite knowledge of the contract between OAI and DRF, Mottershead, and by extension FMG, tortiously interfered with that contract by improper and wrongful means, including by, among other things, soliciting non-profit management and fundraising business from DRF on behalf of FMG in direct violation of her Agreement with OAI.

65.    Mottershead's actions were done intentionally and in order to procure a breach of the contract between OAI and DRF, and indeed, DRF breached its contract with OAI on December 24, 2006.

66.    As a direct and proximate result of Mottershead and FMG's tortious interference, OAI has suffered damages, including without limitation damages relating to the loss of the contract with DRF.

17

## Count IV – Tortious Interference with Prospective Economic Advantage
### (Mottershead and FMG)

67.    OAI hereby incorporates by reference and realleges the allegations in Paragraphs 1 through 66 as if fully set forth herein.

68.    OAI has legitimate business expectancies with its clients and potential clients, including without limitation business expectancies created by OAI's consulting agreement with DRF.

69.    Mottershead, as an independent contractor engaged specifically for the purpose of assisting OAI in its servicing of the agreement with DRF, had full knowledge of OAI's business expectancies with DRF.

70.    Despite knowledge of these business expectancies, Mottershead, and by extension FMG, tortiously interfered with those expectancies by improper and wrongful means, including by, among other things, soliciting non-profit management and fundraising business from DRF on behalf of FMG in direct violation of her Agreement with OAI.

71.    Mottershead's actions were done intentionally and in order to interfere with OAI's business expectancies with DRF, and indeed, DRF terminated its contract with OAI – and thus terminated OAI's business expectancies with DRF – on December 24, 2006.

72.    As a direct and proximate result of Mottershead and FMG's tortious interference, OAI has suffered and continues to suffer irreparable harm and damages, including without limitation damages relating to the loss of the DRF contract and future earnings from DRF as a result of that contract.

## Count V – Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030
### (Mottershead)

73.    OAI hereby incorporates by reference and realleges the allegations in Paragraphs 1 through 72 as if fully set forth herein.

18

74.    As described more fully above, Mottershead obtained and retained confidential information from OAI's computers for her own benefit, disclosed such information by forwarding it from OAI's computers, and used such information by forwarding it from OAI's computers to other FMG employees for use in FMG's business.

75.    In particular, Mottershead: (1) sent via e-mail OAI's confidential, proprietary documents to Wendy Drake of TWG so that TWG and FMG could use the confidential information about DRF contained therein to gain a competitive advantage over OAI; (2) sent via e-mail OAI's confidential, proprietary documents to Monika Richardson of FMG so that FMG could use the documents in the course of its business; and (3) copied OAI's confidential, proprietary proposals onto her X drive and asked Mirjam Krull to burn her X drive onto a CD for her personal use without indicating that it contained OAI Confidential Information.

76.    OAI's computers from which Mottershead copied and sent documents are used in interstate commerce and communication.

77.    By engaging in the conduct described above, Mottershead intentionally exceeded her authorized access to OAI's computer, obtained information from the computer, and sent the information in an interstate communication, causing a loss to OAI in excess of $5000, in violation of 18 U.S.C. § 1030(a)(2)(C).

78.    In addition, by engaging in the conduct described above, Mottershead knowingly exceeded her authorized access to OAI's computer with the intent to defraud.  Her conduct furthered the intended fraud and obtained information the use of which is valued at more than $5000, causing a loss to OAI in excess of $5000, in violation of 18 U.S.C. § 1030(a)(4).

79.    Finally, by engaging in the conduct described above, Mottershead intentionally accessed OAI's computer without authorization, and as a result, intentionally

19

and/or recklessly caused damage resulting in a loss in excess of $5000, in violation of 18
U.S.C. § 1030(a)(5).

### Prayer for Relief

WHEREFORE, OAI respectfully requests that this Court enter judgment
against Mottershead and FMG and grant injunctive relief:

(i)    Permanently enjoining Mottershead and FMG from using, disclosing,
or otherwise misappropriating any of OAI's trade secrets or confidential information;

(ii)   Prospectively enjoining Mottershead and FMG, for a period of one
year following the entry of judgment against her, from directly or indirectly soliciting
business from, attempting to entice away from OAI, or interfering with OAI's relationship
with any OAI client or any entity that was solicited as a client by OAI during Mottershead's
relationship with OAI;

(iii)  Requiring Mottershead and/or FMG to return all OAI trade secret
material and confidential information in Mottershead and/or FMG's possession; and

(iv)   Requiring Mottershead to certify in writing to the Court that she and/or
FMG have returned to OAI all of OAI trade secret material and confidential information, and
have erased from any computer memory or other electronic storage mechanism all
information concerning OAI and its clients.

In addition, OAI respectfully requests that this Court order:

(v)    Mottershead and FMG to pay all damages, including punitive and
exemplary damages, the amount of which will be proved at trial, caused by Mottershead's
breaches of contract and violations of the CFAA, as well as Mottershead and FMG's
misappropriation of trade secrets and other tortious conduct;

(vi)   Mottershead and FMG to pay OAI's reasonable attorneys' fees and
costs incurred in bringing this action; and

\\\NORTHVA - 028803/000001 - 367606 v5

(vii)    Such further relief, whether at law or equity, to which OAI is justly

entitled.

Respectfully submitted,

ORR ASSOCIATES, INC.

By:    *Stanley J Brown / CMB*

Stanley J. Brown (#94946)
Christine M. Burke (#492074)
HOGAN &  HARTSON LLP
8300 Greensboro Drive, Suite 1100
McLean, Virginia 22102
Tel: 703-610-6100
Fax: 703-610-6200

Dated: February 21, 2007

## VERIFICATION

WASHINGTON
DISTRICT OF COLUMBIA

Stephen Orr, on behalf of Orr Associates, Inc., plaintiff corporation in the above-entitled action, being duly sworn, deposes:

I am the Managing Partner of Orr Associates, Inc. I have read the foregoing Verified Complaint For Preliminary And Permanent Injunctive Relief and Monetary Damages, know the contents thereof; and state that, except as to the matters that are therein stated on information and belief which I believe to be true, the foregoing information is based on my personal knowledge, on information communicated to me by personnel and other persons and/or from records of Orr Associates, Inc. I state that such foregoing information is true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct. Executed on 17 of February, 2007.

Stephen K. Orr
Managing Partner
Orr Associates, Inc.

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Orr Associates, Inc.<br>(2801 M St., N.W., Washington, D.C. 20007) | Jennifer Mottershead (1306 27th St., N.W., Washington, D.C., 20007)<br>Foundation Management Group (1055 Thomas Jefferson St., N.W.,<br>The Foundry, Suite L 14, Washington, D.C., 20007) |

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____11001_____
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF
LAND INVOLVED

| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |
|---|---|
| Stanley J. Brown (#94946) & Christine M. Burke (#492074)<br>HOGAN & HARTSON LLP (counsel for plaintiff)<br>8300 Greensboro Drive, Suite 1100<br>McLean, Virginia  22102<br>(703) 610-6100 | Joseph L. Manson, III (counsel for Jennifer Mottershead)<br>Baker & Hostetler LLP<br>Washington Square, Suite 1100<br>Washington, D.C.  20036<br>(202) 861-1500 |

## II.  BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government
    Plaintiff

○ 2 U.S. Government
    Defendant

● 3 Federal Question
    (U.S. Government Not a Party)

○ 4 Diversity
    (Indicate Citizenship of
    Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place<br>of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place<br>of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a<br>Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV.  CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

○ A. *Antitrust*

☐ 410 Antitrust

○ B. *Personal Injury/*
*Malpractice*

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

○ C. *Administrative Agency*
*Review*

☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If
    Administrative Agency is Involved)

● D. *Temporary Restraining*
*Order/Preliminary*
*Injunction*

Any nature of suit from any category may
be selected for this category of case
assignment.

*(If Antitrust, then A governs)*

---

○ E. *General Civil (Other)*      OR      ○ F. *Pro Se General Civil*

Real Property
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

Personal Property
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

Bankruptcy
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

Property Rights
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

Federal Tax Suits
☐ 870 Taxes (US plaintiff or
    defendant
☐ 871 IRS-Third Party 26
    USC 7609

Forfeiture/Penalty
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure
    of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational
    Safety/Health
☐ 690 Other

Other Statutes
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC
    Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced &
    Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/
    Exchange
☐ 875 Customer Challenge 12 USC
    3410
☐ 900 Appeal of fee determination
    under equal access to Justice
☐ 950 Constitutionality of State
    Statutes
☒ 890 Other Statutory Actions (if
    not administrative agency
    review or Privacy Act

| ○ **G.** *Habeas Corpus/ 2255* | ○ **H.** *Employment Discrimination* | ○ **I.** *FOIA/PRIVACY ACT* | ○ **J.** *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ **K.** *Labor/ERISA (non-employment)* | ○ **L.** *Other Civil Rights (non-employment)* | **M.** *Contract* | ○ **N.** *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding    ○ 2 Removed from State Court    ○ 3 Remanded from Appellate Court    ○ 4 Reinstated or Reopened    ○ 5 Transferred from another district (specify)    ○ 6 Multi district Litigation    ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**

18 USC 1030 (plaintiff accessed defendant's computer without authorization and obtained, copied, and sent proprietary and trade secret information)

**VII. REQUESTED IN COMPLAINT**    ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    **DEMAND $** _____    Check YES only if demanded in complaint    **JURY DEMAND:**    YES ☐    NO ☒

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    YES ☐    NO ☒    If yes, please complete related case form.

DATE _____    SIGNATURE OF ATTORNEY OF RECORD _____

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

**I.**    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

**III.**    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

**IV.**    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

**VI.**    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

**VIII.**    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.